UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY JOLIE GAFFNEY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 16-cv-02784-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 19 |

Plaintiff Joy Jolie Gaffney seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for an award of benefits, or, in the alternative, for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On April 24, 2012, Plaintiff filed an application for Title II Disability Insurance Benefits, alleging a disability that began on January 1, 2000. (Administrative Record ("AR") 145-53.) Plaintiff claimed the following impairments: left ankle injuries, post-traumatic stress disorder ("PTSD"), anxiety, and radical attachment disorder. (AR 61.) The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. (AR 92-96, 103-07). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 108-11.) The assigned ALJ held a hearing on February 26, 2014. (AR 29.)

The ALJ considered a number of different medical reports in making her determination about Plaintiff's mental health, none of which were from Plaintiff's treating physicians. (AR 18.)

On June 20, 2011, Plaintiff had a one-time mental health evaluation, in which Plaintiff complained of depression, hypersomnia, loss of energy, poor concentration, and anxiety. (AR 230.) Plaintiff was well-groomed, cooperative, and engaged, and had good eye contact. (AR 232.) Plaintiff's speech was normal, and her mood was depressed and anxious while her affect was anxious. The evaluation found that Plaintiff had chronic and severe major depressive disorder, and assigned a Global Assessment of Functioning ("GAF") score of 50. (*Id.*) The evaluation expressed an intent to prescribe medication to address Plaintiff's mental health issues, but there is no record that Plaintiff received treatment. (*Id.*; AR 18.) Plaintiff was also referred to therapy for depression in July 2012 by Gary Pace, M.D., but again, there is no indication Plaintiff ever received treatment. (AR 18, 329.)

Les Kalman, M.D., conducted an independent psychological consultative evaluation on July 28, 2012. (AR 294.) Plaintiff's posture was described as "tense," and she complained of being under a lot of stress. Plaintiff reported a history of abuse at foster homes and from past relationships. Plaintiff also reported issues with her children, and that the emotional stress affected her physically. (AR 293-94.) Plaintiff complained of nightmares and flashbacks, and feeling depressed and hopeless. (AR 294.) Plaintiff was intermittently tearful, fearful, and guarded during the interview, although her speech was average and her eye contact was good. (AR 294, 296.) Plaintiff denied suicidal or homicidal thoughts, and did not report auditory or visual hallucinations. (AR 296.) Plaintiff was able to do her own cooking, housekeeping, and shopping, and was capable of caring for her own personal hygiene and paying her bills. (AR 297.) Based on the evaluation, Dr. Kalman diagnosed depression and assigned a GAF score of 50, and found that Plaintiff was able to: relate and interact with supervisors and co-workers; deal with the public; understand, remember, and carry out simple one and two-step job instructions; and withstand the stress and pressures associated with daily work activities. Dr. Kalman found that Plaintiff had a decreased ability to maintain attention, concentration, and memory. (*Id.*)

On April 8, 2013, Melody Samuelson, Psy.D., conducted a second psychological consultative valuation. (AR 337.) Plaintiff complained of radical attachment disorder and PTSD, and explained her history of abuse. (AR 337-38.) Plaintiff stated she had trouble with attention,

concentration, and extreme anxiety, but denied suicidal ideations. (AR 338.) Plaintiff reported a history of methamphetamine dependence, and that she had been sober for two years. In terms of daily living, Plaintiff was able to take care of her personal hygiene, pay bills, and go out alone. (AR 339.) Plaintiff reported strained relationships with her family and friends, being easily distracted, and having difficulty completing household tasks and making complex decisions. Plaintiff's thought processes were coherent and organized, with no tangentiality or loosening of associations. Her thought content was relevant and non-delusional, with no bizarre or psychotic thoughts or suicidal, homicidal, or paranoid ideations. (AR 340.) Plaintiff's affect was mildly flat, but she was not tearful, and her speech was normal and clearly articulated. Plaintiff was also alert and oriented, and her insight and judgment was intact. (*Id.*) Dr. Samuelson diagnosed PTSD and assigned a GAF score of 48. (AR 341.) She further described Plaintiff as anxious and "a very fragile woman with a very difficult history," who "would not be appropriate in the work setting of any sort with the exception of a very specialized highly structured setting with professionals trained to manage disabled employees." Dr. Samuelson opined that Plaintiff was not able to work for a sustained period of time due to her symptoms, although she also found Plaintiff's prognosis to be "fair" from a psychiatric standpoint. (*Id.*) In terms of Plaintiff's functions, Dr. Samuelson assessed Plaintiff's ability to understand, remember, and carry out simple one- or two-step job instructions as mildly impaired. Dr. Samuelson assessed moderate impairments as to Plaintiff's abilities to: do detailed and complex instructions; relate and interact with co-workers and the public; maintain concentration and attention, persistence, and pace; associate with day-to-day work activity; accept instructions from supervisors; maintain regular attendance; and performing work activities without special or additional supervision. (AR 341-42.) Dr. Samuelson also found Plaintiff was not capable of handling funds. (AR 342.)

On April 29, 2013, non-examining physician Elizabeth Covey, Psy.D., reviewed Plaintiff's record and determined that Plaintiff was not significantly limited in remembering locations and work-like procedures or short and simple instructions, but that she was moderately limited in understanding and remembering detailed instructions. (AR 86.) Dr. Covey also found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended

1 periods, but that she was capable of maintaining concentration, pace, and persistence for simple
2 routines throughout a normal workday and workweek. (AR 87.) Dr. Covey found that Dr.
3 Kalman's opinion was without substantial support from other evidence in the record, and that it
4 was an overestimate of Plaintiff's restrictions and limitations. (AR 88.) Dr. Covey did not appear
5 to consider Dr. Samuelson's opinion. (*See* AR 84.)

At the February 26, 2014 oral hearing, Plaintiff testified that she had worked as an accounting receptionist in 1999, but that she had quit due to anxiety issues stemming from her childhood. (AR 34.) Plaintiff stated that she had tried to find a job, but that her anxiety issues affected her search. (AR 35.) Plaintiff said she was on medication, but that she continued to have anxiety attacks at least twice a week. (AR 40.) Plaintiff also stated she was on a waiting list for mental health therapy. (AR 42.)

The ALJ issued an unfavorable decision on July 24, 2014. (AR 9-21.) A request for review was filed with the Appeals Council on September 3, 2014. (AR 8.) On March 30, 2016, the Appeals Court denied Plaintiff's request for review. (AR 1-4.) On May 23, 2016, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

On October 7, 2016, Plaintiff filed her motion for summary judgment. (Plf.'s Mot., Dkt. No. 18.) On November 4, 2016, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 19.) Plaintiff filed a reply on November 18, 2016. (Plf.'s Reply, Dkt. No. 20.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the

4

evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick*, 157 F.3d at 721. At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante*, 262 F.3d at 953-954. The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On July 24, 2014, the ALJ denied Plaintiff's request for benefits. (AR 9-21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 24, 2012, the application date. (AR 14.) At step two, the ALJ determined that Plaintiff suffered from

the following severe impairments: depression, anxiety, obesity, left ankle degenerative joint disease, bilateral knee arthritis, and peroneal tendonitis. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 14-16.)

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined by 20 C.F.R. 416.967(a). The ALJ added limitations that Plaintiff had to avoid concentrated exposure to hazards, and that she was limited to simple, repetitive tasks with occasional contact with the public. (AR 16.) In determining the RFC, the ALJ found that the record showed diagnoses of depressive disorder, PTSD, and anxiety. (AR 17.) The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects were not entirely credible. (*Id.*) The ALJ pointed to her lack of employment, as well as the wide range of activities of daily living she engaged in, including caring for her children and doing all household chores without limitation. (AR 17-18.) The ALJ also noted that while PTSD and depression were noted in the treatment records, Plaintiff had not had any treatment or follow-up for her mental health therapy referrals. (AR 18.) With respect to her mental health evaluations in June 2011 and July 2012, the ALJ again noted that there was no indication of follow-up for mental health treatment, and no indication of medication prescriptions in the record. Further, Plaintiff's affect was normal and appropriate on the examinations. The ALJ acknowledged that Plaintiff received low GAF scores, but found that this "appear[ed] to be a 'global assessment' consideration of all of her limitations, including her legal problems, drug history, unemployment, financial difficulties, and housing problems." (*Id.*) Based on the depression and PTSD, the ALJ restricted Plaintiff to simple, repetitive tasks with occasional contact with the public.

With respect to the opinion evidence, the ALJ noted, at the onset, that the record did not contain any opinions from treating physicians indicating that Plaintiff was disabled or had limitations greater than those determined in the ALJ's decision. (*Id.*) The ALJ then examined Dr.

6

Kalman's opinion, and found that the report was entitled to partial weight, as the record as a whole supported that Plaintiff was capable of performing simple, repetitive tasks on a sustained basis. (AR 19.) The ALJ further found that Dr. Samuelson's opinion was entitled to reduced weight because the GAF assessment of 48 was not fully consistent with the moderate limitations assessed by Dr. Samuelson. (*Id.*) Finally, the ALJ found that Dr. Covey had found that Plaintiff was capable of simple, repetitive tasks, consistent with the ALJ's findings. (AR 20.)

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 20.)

## IV. DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in evaluating Dr. Samuelson's opinion. (Plf.'s Mot. at 7.) In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Id.* A treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor, and, if contradicted, only for specific and legitimate reasons supported by substantial evidence. *Chater*, 81 F.3d at 830. Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

Plaintiff argues that the ALJ erred by not considering Dr. Samuelson's description of Plaintiff as "very fragile," and her conclusion that Plaintiff was not "appropriate in the work setting of any sort with the exception of a very specialized highly structured setting with professionals trained to manage disabled employees." (Plf.'s Mot. at 8.) Plaintiff contends that this portion of Dr. Samuelson's discussion supports the GAF score of 48, and also notes that Dr.

Kalman assigned Plaintiff a GAF score of 50.[1] (*Id.* at 8-9.) Further, Plaintiff contends that the ALJ did not point to any specific records indicating that Plaintiff was capable of performing work greater than simple one or two-step job instructions. (*Id.* at 10.) Defendant responds that the ALJ reasonably gave reduced weight to Dr. Samuelson's opinion, as the GAF score of 48 was inconsistent with Plaintiff's mental status examination, which "revealed largely benign findings and no suicidal ideation," as well as Dr. Samuelson's opinion that Plaintiff "had only mild or moderate functional limitations." (Def.'s Opp'n at 5.)

The Court finds that the ALJ did not err in giving Dr. Samuelson's opinion reduced weight due to the GAF assessment score of 48 not being fully consistent with the limitations assessed by Dr. Samuelson. Psychologists and psychiatrists, in diagnosing mental illness, often make five different sub-diagnoses, on what they call "Axes." *Williamson v. Astrue*, No. EDCV 12-00364-CW, 2013 WL 141544, at *4 n.4 (C.D. Cal. Jan. 10, 2013). Axis V measures the GAF. *Id.* The GAF is a scale ranging from zero to 100, used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental health. *Id.* The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *Sigmon v. Kernan*, No. CV 06-5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009). A GAF score may help an ALJ assess mental residual functional capacity, but it is not raw medical data. People with a GAF score of 41 to 50 have "serious symptoms" or any serious impairment in social, occupational, or school functioning. *Williamson*, 2013 WL 141544, at *4 n.5 (C.D. Cal. Jan. 10, 2013). By contrast, a GAF score of 51 to 60 indicates only "moderate difficulty in functioning." *Atkinson v. Astrue*, No. 2:10-cv-2072-KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13, 2011). People in that category may have flat affects, circumstantial speech, occasional panic attacks, few friends, or conflicts with coworkers. *Id.* A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning but generally functioning well with some meaningful interpersonal

---

[1] Plaintiff does not challenge the ALJ's treatment of Dr. Kalman's opinion, focusing solely on the ALJ's treatment of Dr. Samuelson's opinion. (*See* Plf.'s Mot. at 7 ("The issue is whether the ALJ properly evaluated Dr. Samuelson's opinion.").)

8

relationships. *Sigmon*, 2009 WL 1514700, at *9 n.3.

Here, Dr. Samuelson's examination showed that Plaintiff was able to conduct activities of daily living, including self-dressing, self-bathing, personal hygiene, paying bills and managing money, going out alone, and taking care of her two-year old child. (AR 339.) Her thought process was coherent and organized, and her thought content was relevant and non-delusional, with no bizarre or psychotic thought content or suicidal, homicidal, or paranoid ideations. (AR 39-40.) While Plaintiff's mood was mildly flat, she was not tearful and reported "mild feelings of depression." (AR 340.) Plaintiff's speech was normal and clearly articulated, and she was alert and oriented. (*Id.*) While Dr. Samuelson described Plaintiff was "very fragile," she also deemed Plaintiff's condition "fair" in her prognosis. (AR 341.) Dr. Samuelson also opined that Plaintiff had only mild impairments in conducting simple one or two-step job instructions, and moderate impairments in doing detailed and complex instructions, interacting with co-workers and the public, maintaining concentration, associating with day-to-day activity, accepting instructions, maintaining regular attendance, and performing work activities without special or additional supervision. (AR 341-42.) Even considering Dr. Samuelson's "fragile" description, the ALJ could reasonably find that the GAF score of 48 -- which indicates *serious* symptoms or impairments -- was not consistent with Plaintiff's daily activities, Dr. Samuelson's prognosis of Plaintiff's condition as "fair," and Dr. Samuelson's assessment of only mild to moderate impairments. *Compare with Nieves v. Colvin*, Case No. 13-cv-4191-KAW, 2015 WL 153441, at *5-7 (N.D. Cal. Jan. 12, 2015) (ALJ could discount medical records where the provider assigned a GAF score of 38 and 40 although the claimant had normal sensorium, orientation, relatedness, grooming, insight, judgment, thought process, and thought content, and only exhibited sad affect, depressed mood, normal to pressured speech, and was hyperverbal). This inconsistency, in turn, supports the ALJ's decision to give reduced weight to Dr. Samuelson's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ can determine whether inconsistencies are material in discounting medical opinions).

Other medical evidence was not consistent with Dr. Samuelson's GAF score. Plaintiff reported a wide range of activities of daily living, including self-care, caring for a two-year old

child and a teenager, preparing simple meals and doing household chores, shopping for food and clothing, paying bills, and playing Scrabble. (AR 15, 51, 53-54, 180-184, 297, 339.) Dr. Kalman opined that Plaintiff was able to relate and interact with supervisors and co-workers, deal with the public, understand and carry out simple one- or two-step job instructions, and withstand the stress and pressures of daily work, as well as a decreased ability to maintain attention, concentration, and memory.[2] (AR 297.) Non-examining physician Dr. Covey found that Plaintiff was not significantly limited, except in relation to detailed instructions and completing a normal workday without an unreasonable number and length of rest periods. (AR 86-87.) The ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms was not entirely credible, based on the wide range of activities of daily living and household chores she conducted, a finding that Plaintiff does not dispute. (AR 17-18.) The Court, therefore, concludes that the ALJ did not err in giving reduced weight to Dr. Samuelson's opinion.

With respect to Dr. Samuelson's opinion about Plaintiff's inability to work except in very specialized, highly structured setting, this is an opinion on the ultimate issue of whether Plaintiff was disabled or capable of working that was reserved to the Commissioner. Whether a claimant is disabled is an administrative, rather than a medical, finding that is reserved for the ALJ. *See* 20 C.F.R. § 416.927(e); SSR 96-5p ("issues [that] are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings" include "[w]hether an individual is 'disabled' under the Act"). The source of any such opinion, medical or otherwise, is not entitled to "any special significance." SSR 96-5p ("treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). Accordingly, the ALJ was not bound by Dr. Samuelson's conclusion about Plaintiff's inability to work, particularly when it appears inconsistent with Dr. Samuelson's examination and other findings.

---

[2] While Dr. Kalman assigned a GAF score of 50, the ALJ explained that the low GAF scores appear to be a global assessment of all of Plaintiff's limitations, including her legal problems, drug history unemployment, financial difficulties, and housing problems. (AR 18.) Further, while a GAF score may assist in the assessment of mental residual functional capacity, it is not raw medical data, and an "ALJ is not required to assign GAF scores controlling weight in the face of other conflicting record evidence." *Jones v. Colvin*, 634 Fed. Appx. 168, 170 (9th Cir. 2015).

Finally, as to Plaintiff's assertion that the ALJ did not point to any specific record indicating that Plaintiff was capable of performing greater than one or two-step job instructions, the ALJ cited to Dr. Covey's opinion, in which Dr. Covey found that Plaintiff was capable of simple, repetitive tasks. (AR 20 (citing AR 83), 87.) In addition to Dr. Covey's opinion, the ALJ pointed out that Plaintiff had no follow-up for mental health treatment, that she had no suicidal or homicidal ideations, that she had good eye contact and was cooperative and engaged, and that her affect had been normal and appropriate on examinations. (AR 17-18.) Further, the ALJ observed that Plaintiff had reported a wide range of activities of daily living, and assessed only a mild restriction therein. (AR 15, 18; *compare with Evans v. Astrue*, No. C 07-2153 SBA, 2008 U.S. Dist. LEXIS 80428, at *11 (explaining that "'activities of daily living' reasonably implies 'simple, repetitive tasks' such as an individuals' cleaning, eating, and transportation habits") (N.D. Cal. Sept. 30, 2008).) Finally, the ALJ noted that there was no evidence in the record from treating physicians that Plaintiff had disabilities or limitations greater than those determined by the ALJ. (AR 18.) The ALJ did not err in finding Plaintiff was restricted to simple, repetitive tasks.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED. The Clerk shall close the case.

IT IS SO ORDERED.

Dated: September 19, 2017

KANDIS A. WESTMORE
United States Magistrate Judge